UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BLUE CROSS AND BLUE SHIELD
OF MASSACHUSETTS, INC.,
    Plaintiff,

v.                                    CIVIL ACTION NO.
                                      97-11929-MBB

MASSACHUSETTS REHABILITATION
ASSOCIATION, INC., JEFFREY
GREENFIELD and KARL PETE,
    Defendants.

## MEMORANDUM AND ORDER RE: DEFAULT JUDGMENT

### June 26, 2000

**BOWLER, U.S.M.J.**

On August 25, 1997, plaintiff Blue Cross and Blue Shield of Massachusetts, Inc. ("Blue Cross") filed a verified complaint against defendants Massachusetts Rehabilitation Association, Inc. ("the MRA"), Jeffrey Greenfield, D.C. ("Dr. Greenfield"), Karl Pete, M.D. ("Dr. Pete") and former defendants Troy Wheelwright, D.C. ("Dr. Wheelwright") and Ernest Sneddon, M.D. ("Dr. Sneddon")[1] (collectively: "defendants"). The complaint alleges that defendants engaged in a variety of fraudulent schemes whereby the MRA submitted false claims to Blue Cross under the provider numbers of two physicians, Drs. Sneddon and Pete ("the defendant physicians"), for medical services not personally performed by the defendant physicians.

---

[1] This court voluntarily dismissed Drs. Sneddon and Wheelright as defendants.



As more fully explained in this court's Procedural Order of May 27, 1999, this court made an entry of a default against Dr. Greenfield (Docket Entry ## 38 & 41) and against the MRA (Docket Entry ## 39 & 40) pursuant to Rule 55(a) ("Rule 55(a)"), Fed. R. Civ. P. Although Rule 55(a) speaks in terms of the clerk entering a default, it "is not a limitation on the power of the court to [enter a default]." 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane Federal Practice and Procedure § 2682 (1998).

On May 3, 1999, Blue Cross filed a motion for a default judgment against Dr. Greenfield and the MRA. (Docket Entry # 49). Although the motion moved for a default judgment under Rule 55(b)(1), it also incongruously requested "that the court enter judgment" in favor of Blue Cross. (Docket Entry # 49). In light of Blue Cross' request to "the court" and because Dr. Greenfield had made an appearance by filing a pro se complaint, albeit a defective complaint subsequently stricken, this court construed the motion as seeking a default judgment from the court under Rule 55(b)(2). See generally 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane Federal Practice and Procedure § 2682 & 2686 (1998) (party's appearance, "without more, will not prevent entry of a default for failure to plead or otherwise defend;" although where party appears, "Rule 55(b)(2) requires that the court, rather than the clerk, enter the judgment by default"); see, e.g., Parise v. Riccelli Haulers, Inc., 672 F.Supp. 72, 74 (N.D.N.Y. 1987) (court, not clerk, issued default judgment where

defaulting party initially filed answer but thereafter failed to file answer to amended complaint); Bolduc v. Bailey, 586 F.Supp. 896, 898-899 (D.Colo. 1984) (court entered judgment by default under Rule 55(b)(2) where the defendant kept court apprized of his address although the defendant did not formally appear in action).

On May 27, 1999, this court issued a Procedural Order explaining the standard of review applicable to the motion for a default judgment which, as noted therein, is synonymous to the standard used to decide a motion to set aside the entry of a default judgment under Rule 55(c).[2] Because Blue Cross' motion contravened LR. 7.1. and did not adequately assist this court in examining the existence of a meritorious defense, this court directed Blue Cross to file a supporting memorandum setting forth

---

[2] The Procedural Order also advised Blue Cross that courts may examine liability and the existence of a valid cause of action under Rule 55(b)(2). Rule 55(b)(2) allows the court to "order such references as it deems necessary" or to conduct a hearing to "establish the truth of any averment by evidence or to make an investigation of any other matter" in order to enable the court to enter a default judgment. Rule 55(b)(2), Fed. R. Civ. P. Hence, this court, in its discretion, can examine liability under Rule 55(b)(2) and thereafter "enter a judgment on default" or dismiss the complaint. Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992) (upholding dismissal of complaint by district court after entry of a default inasmuch as court has discretion to conduct hearing to examine liability and thereafter enter default judgment or dismiss action for failure to state a claim); see D.B. v. Bloom, 896 F.Supp. 166, 169-170 & n. 2 (D.N.J. 1995) (court examined viability of causes of action while noting its discretion under Rule 55(b)(2) to require proof of facts "'in order to determine liability'"); 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane Federal Practice and Procedure § 2688 (1998) ("[e]ven after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law").

the elements of each cause of action in the complaint. Blue Cross complied by filing the supplemental memorandum in June 1999 but did not provide evidence of proper service of the supporting memorandum.[3]

Hence, on April 24, 2000, this court issued another Procedural Order directing Blue Cross to provide evidence of service of the supporting memorandum on Dr. Greenfield and the MRA. On May 8, 2000, Blue Cross filed the necessary proof that it had served Dr. Greenfield and the MRA with the supporting memorandum in June 1999 and had re-served these parties on May 5, 2000. (Docket Entry # 62).

Satisfied that both Dr. Greenfield and the MRA had notice of all of the filings used to support the application for a default judgment, this court issued a Memorandum and Order on May 12, 2000, allowing Blue Cross' motion for a default judgment and entering a default judgment against Dr. Greenfield and the MRA. The Memorandum and Order examined Dr. Greenfield's and the MRA's liability under the RICO,[4] breach of contract,[5] fraud, negligent

---

[3] The supporting memorandum did not object to this court's reliance on Rule 55(b)(2) in the May 27, 1999 Procedural Order and treatment of the motion as one seeking entry of a default judgment by the court as opposed to by the clerk. To the contrary, the supporting memorandum requested that "the Court" allow the motion for default judgment. (Docket Entry # 56).

[4] RICO is an acronym for the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. ("RICO" or "section 1961"). The Memorandum and Order details the various causes of action in the verified complaint which need not be repeated.

[5] This court examined the breach of contract count as to Dr. Greenfield's liability inasmuch as Blue Cross did not seek

4

misrepresentation and chapter 175H[6] counts. Finding that the MRA had valid causes of action under the foregoing counts,[7] that neither Dr. Greenfield nor the MRA had a meritorious defense, and that the default was wilful, this court allowed the motion for a default judgment, notwithstanding the lack of prejudice, and set a hearing on damages for June 5, 2000.

At the June 5 hearing, Denise M. DeMaina ("DeMaina"), who personally participated in the investigation of the MRA's billing practices, testified at length about Blue Cross' investigation of those practices and the time she spent conducting the investigation.[8] DeMaina, a senior investigator in Blue Cross' fraud unit, began investigating the MRA's billing practices in 1996. Initially, she identified the participating providers, researched the MRA and determined that Drs. Pete and Greenfield were founders of the MRA. She then began collecting a claims history of the MRA by reviewing every claim processed by Blue Cross during a set period of time. She reviewed each claim for

---

liability against the MRA under this count.

[6] Massachusetts General Laws chapter 175H, section six.

[7] This court stressed, however, that the extensive discussion of the causes of action should not be construed as diminishing the importance of the other factors used to determine whether to enter a default judgment. (Docket Entry # 63, n. 13). Indeed, such factors, standing alone, also merit issuance of a default judgment.

[8] Blue Cross seeks compensation for the reasonable costs incurred by the investigation. Chapter 175H allows Blue Cross to recover "reasonable attorneys [sic] fees and costs, inclusive of costs of investigation." Mass. Gen. L. ch. 175H, § 6. Blue Cross does not seek recovery of its attorneys' fees.

the patient's name, identification number, diagnosis, charge and provider number of the participating physician or chiropractor. She then sent approximately 40 to 50 surveys to various named patients asking them to describe the nature of the treatment received and the identity of the person rendering the treatment. (Ex. 1).[9] She also obtained and reviewed the medical records of all of the named patients to compare the dates of service against the dates of service in the claims relative thereto. DeMaina also conducted a search of the MRA's litigation history.

DeMaina kept track of her time on a daily basis and entered her time into an electronic database every week. She testified that she spent 476 hours conducting the aforementioned investigation through April 1997.[10] Having heard DeMaina's testimony, this court finds that the 476 hours spent on the investigation is reasonable.

DeMaina valued her time at $60.00 per hour. Although she is not paid at the rate of $60.00 per hour, she testified that the $60.00 figure is below the market value for the investigative services of a fraud investigator. The Director of Blue Cross' fraud unit developed the $60.00 figure. This court finds that it is a reasonable hourly rate. Multiplying the reasonable number of hours (476) by the reasonable hourly rate ($60.00) yields the reasonable total amount of $28,560 in investigative costs.

---

[9] Exhibit 1 is a representative sample of the form letter DeMaina sent to the named patients.

[10] Blue Cross does not seek reimbursement for investigative costs incurred after April 1997.

DeMaina also testified about the $116,607.74 of total damages sought by Blue Cross. As fully set forth in the May 12, 2000 Memorandum and Order, defendants, including Dr. Greenfield received compensation for noncompensable services utilizing the false billing practices of the MRA. In particular, during the time the MRA was in business from the fall of 1995 to the spring of 1996, Blue Cross paid a total of $116,607.74 for the fraudulently submitted claims of the MRA.[11]

## DISCUSSION

Blue Cross bears the burden of establishing its damages. Having considered all of the evidence, this court finds that Blue Cross met its burden and established that it incurred $116,607.74, the requested amount, in damages resulting from Dr. Greenfield's and the MRA's wrongful conduct. Although this court finds ample evidence to support a damages award in this amount on the RICO count in Count II,[12] the fraud count in Count VI, the negligent misrepresentation count in Count VII and the chapter 175H count in Count IX, it is well settled that a plaintiff cannot recover twice for the same injury. See Flag Fables v.

---

[11] Although Blue Cross may have paid an amount in excess of the $116,607.74 figure, Blue Cross only requests damages in the amount of $116,607.74.

[12] For example, under the RICO count in Count II Blue Cross is entitled to recover damages equal to the total amount of the payments on the fraudulent and false claims. See Aetna Casualty & Surety Company v. P & B Autobody, 43 F.3d 1546, 1568-1570 (1st Cir. 1994) (having found violation of section 1962(c), Aetna was "entitled to damages equal to the entire amount of its payments on fraudulent claims").

7

Jean Ann's Country Flags & Crafts, 753 F.Supp. 1007, 1019 (D.Mass. 1990) (duplicative recovery improper; "wronged party may recover appropriate damages only once"); see also Borden v. Paul Revere Life Insurance Co., 935 F.2d 370, 383 (1st Cir. 1991) (collecting cases; the plaintiff's recovery under one tort theory precludes duplicative recovery for same damages under separate tort theory); Refuse & Environmental Systems, Inc. v. Industrial Services of America, 932 F.2d 37, 43 (1st Cir. 1991) (chapter 93A award duplicated recovery under abuse of process count inasmuch as both counts based on same facts); Freeman v. Package Machinery Co., 865 F.2d 1331, 1345 & n. 7 (1st Cir. 1988) (recognizing that a plaintiff is generally entitled one full recovery despite multiple legal theories).

RICO provides for the trebling of damages in section 1964(c).[13] Blue Cross' injuries, in the form of its payments for noncompensable services, were both a but for and a proximate result of the racketeering activity. (Docket Entry # 63); see, e.g., United Healthcare v. American Trade Insurance Company, Limited, 88 F.3d 563, 572 (8th Cir. 1996); Aetna Casualty & Surety Company v. P & B Autobody, 43 F.3d 1546, 1568-1570 (1st Cir. 1994). Although a judgment by default "shall not be different in kind from or exceed in amount that prayed for in the demand for judgment," Rule 54(c), Fed. R. Civ. P., the verified

---

[13] In pertinent part, section 1964(c) provides that: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c).

complaint notified the MRA and Dr. Greenfield of their liability under section 1964(c) "for treble damages." (Docket Entry # 1, ¶ 44); cf. In Re Crazy Eddie Securities Litigation, 948 F.Supp. 1154, 1163-1164 (E.D.N.Y. 1996). Accordingly, the $116,607.74 damages are trebled to an amount of $349,823.22.[14]

---

[14] In closing argument at the June 5 hearing, Dr. Greenfield, appearing pro se, indicated that he did not have any finances. The financial standing of a defendant is generally "inadmissible as evidence in determining the amount of compensatory damages to be awarded." Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (reversing trial court's award of damages in default judgment due to improper reliance on the defendants' ability to pay and financial condition). On the other hand, "evidence of a defendant's financial condition is admissible in federal-question cases in which a plaintiff has introduced evidence that would support an award of punitive damages." Koblosh v. Adelsick, 1997 WL 311956 at * 2 (N.D.Ill. June 5, 1997); accord City of Newport v. Fact Concepts, Inc., 453 U.S. 247, 270 (1981) ("evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"); see also Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 151 (D.Kan. 1990) ("majority of federal courts permit pretrial discovery" of the defendant's financial information where the plaintiff asserts punitive damages claim).

Dr. Greenfield, however, has the burden of proving that his financial condition justifies a reduction in punitive damages. See Lambert v. Fulton County, Georgia, 2000 WL 754360 at * 5 (N.D.Ga. May 30, 2000) ("[t]he defendant has the burden of proving that his financial circumstances warrant a reduction in a punitive damages award"). In addition, the statutory treble damages provision of section 1964, although part remedial and part punitive, is not a punitive damages award. See Moravian Development Corporation v. Dow Chemical Company, 651 F.Supp. 144, 149-150 (E.D.Pa. 1986) (distinguishing between RICO's treble damages award and punitive damages award and finding that RICO does not allow for punitive damages award); Robert S. Murphy, Comment, *Arizona RICO, Treble Damages, and Punitive Damages: Which One Does Not Belong?*, 22 Ariz. St. L. J. 299, 312 (1990) (distinguishing between a section 1964(c) treble damages award and a punitive damages award). Hence, this court did not make an award of punitive damages. This court also declines to reduce the mandatory trebling of the actual damages award on the basis of Dr. Greenfield's unsupported poor financial condition.

Blue Cross may also recover its reasonable investigative costs under chapter 175H. In light of the foregoing, these costs total $28,560.

Prejudgment interest is recoverable, at a minimum, under the fraud, negligent misrepresentation and chapter 175H counts[15] at a rate of 12% per annum determined "from the date of the commencement of the action." Mass. Gen. L. ch. 231, §§ 6B & 6H. Blue Cross requests an award of prejudgment interest, calculated from the August 25, 1997 filing of the verified complaint, on the underlying judgment of $116,607.74. (No Docket Entry No. Assigned, Memorandum Regarding Calculation of Prejudgment Interest). Twelve percent of $116,607.74 is $13,992.93. The first two years therefore resulted in a prejudgment interest figure of $27,985.86. There are 304 days from August 27, 1999 to June 26, 2000. Prejudgment interest accrued in a daily amount of $38.34 resulting in a total amount of $11,655.36 for 304 days. Accordingly, Blue Cross is entitled to recover prejudgment interest in the total amount of $39,641.22.

## CONCLUSION

In accordance with the foregoing discussion, Blue Cross is entitled to recover a default judgment from Dr. Greenfield and the MRA in the amount of $418,024.44. This court will conduct a

---

[15] Blue Cross correctly does not seek to recover prejudgment interest on the RICO count in Count II.

10

final pretrial conference on July 17, 2000, at 10:00 a.m.

                                    */s/ Marianne B. Bowler*
                                    **MARIANNE B. BOWLER**
                                    United States Magistrate Judge